**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X

JOSEPH P. LEONARDO and AUDREY
M. LEONARDO,

                    *Plaintiffs*,

                                                    **REPORT AND**
                                                  **RECOMMENDATION**

          -against-                                 21-CV-04949 (OEM)(JMW)

WELLS FARGO BANK, N.A., *Successor by Merger*
*to Wachovia Mortgage, FSB*, U.S. BANK TRUST NATIONAL
ASSOCIATION, *As Trustee for LB-Cabana Series IV Trust*,
DRUCKMAN LAW GROUP, PLLC, RUSHMORE LOAN
MANAGEMENT SERVICES, SN SERVICING CORPORATION,
SPURS CAPITAL, LLC, SCOTT H. SILLER ESQ., *In His*
*Individual and Professional Capacities*, REALTY ADVISORS, INC.,
LESLIE RENDON, *Assistant to Vanessa Gonzalez,*
*In Her Individual Capacity*, and VANESSA GONZALEZ,
*Field Asset Manager for Spurs Capital In Her Professional and*
*Individual Capacities*,

                         *Defendants*.

---------------------------------------------------------------------X

**A P P E A R A N C E S:**

    **Joesph P. Leonardo**
    **Audrey M. Leonardo**
    2848 Riverside Drive
    Wantagh, NY 11793
    *Proceeding Pro Se*

    Ofunne N. Edoziem, Esq.
    **Reed Smith LLP**
    599 Lexington Avenue
    New York, New York 10022
    *Counsel for Defendant Wells Fargo Bank, N.A.*

    Maria Sideris, Esq.
    **Druckman Law Group PLLC**
    242 Drexel Avenue
    Westbury, New York 11590
    *Counsel for Defendant Druckman Law Group, PLLC*

Zachary Robin Gold, Esq.
**Friedman Vartolo LLP**
85 Broad Street, Suite 501
New York, NY 10004
*Counsel for Defendants Rushmore Loan Management Services,*
*U.S. Bank Trust National Association, and SN Servicing Corporation*

Charles A. Higgs, Esq.
**Law Office of Charles A. Higgs**
2 Depot Plaza
Beford Hills, NY 10507
*Counsel for Defendants Spurs Capital, LLC,*
*Leslie Rendon, and Vanessa Gonzalez*

**WICKS**, Magistrate Judge:

*Pro Se* Plaintiffs Joseph P. Leonardo and Audrey M. Leonardo ("Plaintiffs") bring this action against Defendants Wells Fargo Bank N.A. ("Wells Fargo"), U.S. Bank Trust National Association ("USB"), Druckman Law Group, PLLC ("Druckman"), Rushmore Loan Management Services ("Rushmore"), SN Servicing Corporation ("SN"), Spurs Capital, LLC ("Spurs Capital"), Scott Siller, Esq. ("Siller"), Friedman Vartolo, LLP ("FV"), Zachary Gold, Esq., Michael Nardolillo, Esq.[1], Realty Advisors, Inc. ("Realty Advisors"), Leslie Rendon, and Vanessa Gonzalez (collectively, "Defendants") for: (i) violations of the Fourteenth Amendment, 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") ("Count I"); (ii) fraud upon the courts ("Count II"); (iii) breach of good faith and fair dealing (as against Defendant Wells Fargo only) ("Count III"); (iv) violations of the New York State Organized Crime Control Act ("NYSOCCA") (as against Defendants FV, Gold, Nordolillo, and Siller only) ("Count IV"); (v) malicious and injurious falsehood (as against Defendants Spurs Capital, Realty Advisors, Rendon and Gonzalez only) ("Count V"); (vi) violations of the Fair Debt Collection Practices Act,

---

[1] Defendants Friedman Vartolo LLP, Zachary Gold, and Michael Nardolillo were voluntarily dismissed from the case on January 19, 2024. (*See* Electronic Order dated January 19, 2024.)

U.S.C. 15 § 1692 ("FDCPA") ("Count VI"); (vii) perjury/subordination of perjury and false swearing (as against Defendants Wells Fargo, USB, Druckman, Rushmore, Spurs Capital, FV, and Gold only) ("Count VII"); and (viii) intentional infliction of emotional distress ("Count VIII"). (ECF No. 136.) Before the Court, on referral from the Hon. Orelia E. Merchant (*See* Electronic Order dated December 11, 2023), is Defendants'[2] Motion to Dismiss all claims asserted in Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) (ECF No. 175), which is opposed by Plaintiffs (ECF No. 179, 196). For the reasons stated herein, the undersigned respectfully recommends Defendants' Motion to Dismiss (ECF No. 175) be **GRANTED** in its entirety.

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from Plaintiffs' Third Amended Complaint ("TAC") and documents integral to it,[3] and are assumed true for the purposes of the Motion to Dismiss. (*See generally* ECF Nos. 136, 176).

In June 2008, Plaintiffs secured a mortgage loan from Wachovia Bank FSB in the amount of $504,000.00 (the "Loan") against the property located at 2848 Riverside Drive, Wantagh NY 11793 (the "Property"). (ECF No. 136 at ¶ 20.) Wells Fargo subsequently became the holder of Plaintiffs' loan after Wachovia and Wells Fargo Bank merged. (*Id.* at ¶ 20, 22.) In February 2010,

---

[2] Defendants Wells Fargo, Druckman, USB, Rushmore, Spurs Capital, Rendon, and Gonzalez moved to dismiss Plaintiffs' Third Amended Complaint. (*See* ECF No. 175 at 1.) Defendants Realty Advisors and Siller have not yet appeared in this action.

[3] Given Plaintiffs' *pro se* status, the following allegations are drawn not only from the Complaint, but from the undersigned's review of all other filings. "[W]hen analyzing the sufficiency of a *pro se* pleading, a court may consider factual allegations contained in a *pro se* litigant's opposition papers and other court filings." *Rodriguez v. Rodriguez*, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (citations and internal quotation marks omitted).

Plaintiffs failed to comply with the conditions of the mortgage, and Wells Fargo commenced a foreclosure action captioned *Wells Fargo Bank, NA, et seq. v. Joseph P. Leonardo*, *et al*., Index No. 14885/2010 (the "2010 Foreclosure Action"). (*See* ECF No. 176-1 at 2, 5.) In 2015, Wells Fargo voluntarily discontinued the 2010 Foreclosure Action, reinstating the Loan. (ECF No. 176-2 at 3-7.) Following the 2010 Foreclosure Action, Plaintiffs continued to fail to pay the amount due and owing on their loan, and, in 2013, Wells Fargo commenced a second foreclosure action against Plaintiffs to foreclose the mortgage captioned *Wells Fargo Bank, NA v. Joseph P. Leonardo, et al.*, Index No. 14266/2013 (the "2013 Foreclosure Action"). (ECF No. 176-3 at 4-6.) Plaintiffs appeared in the 2013 Foreclosure Action by filing an Answer. (*See generally* ECF No. 176-4).

Plaintiffs unsuccessfully moved to dismiss Wells Fargo's Complaint in the 2013 Foreclosure Action. (ECF No. 176-5 at 1.) Wells Fargo then moved for an order of reference, which was granted. (ECF No. 176-6 at 2.) Plaintiffs filed a motion to reargue, and the motion was denied. (ECF No. 176-5 at Mtn. No. 5). Wells Fargo then moved for, and was granted, judgment of foreclosure and sale in November 2015. (ECF No. 176-7 at 2.) Plaintiffs appealed the Order denying their motion to dismiss as well as the order granting Wells Fargo summary judgment motion in the 2013 Foreclosure Action. (ECF No. 176-8.) On appeal, Plaintiffs argued that the 2013 Foreclosure Action was improper because it was commenced while the 2010 Foreclosure Action was still ongoing. (ECF No. 176-8.) In 2018, the Appellate Division affirmed the Supreme Court's judgment – and granted costs to Wells Fargo – holding that the 2013 Foreclosure Action was proper and also noting that the 2010 Foreclosure Action was previously discontinued. (ECF No. 176-8). Specifically, the Appellate Division found:

> In June 2008, [Plaintiffs] executed a note in the sum of $504,000 in favor of Wachovia Mortgage, FSB. The note was secured by a mortgage on residential property located in

Nassau County. In August 2010, Wells Fargo Bank, N.A., as successor by merger to Wachovia commenced [the 2010 Foreclosure Action] against [Plaintiffs], among others, to foreclose the mortgage. [Plaintiffs,] appearing *pro se*, served an answer to the [C]omplaint dated September 7, 2010. Thereafter, in November 2013, [Wells Fargo] commenced [the 2013 Foreclosure Action] against [Plaintiffs], among others, to foreclose the mortgage. [Plaintiff Joseph P. Leonardo], appearing *pro se*, served a notice of appearance and answer dated January 5, 2014, asserting various affirmative defenses, including lack of standing. Audrey M. Leonardo did not appear or answer the [C]omplaint.

\*\*\*

In May 2014, [Plaintiff Joseph P. Leonardo] moved pursuant to CPLR 3211(a)(4) to dismiss the [C]omplaint insofar as asserted against him the ground that the 2010 [Foreclosure] [A]ction was pending between the same parties for the same cause of action. In September 2014, [Wells Fargo] moved, inter alia, for summary judgment on the complaint, to strike [Plaintiff Joseph P. Leonardo's] answer, and for an order of reference. [Plaintiff Joseph P. Leonardo] cross-moved, in effect, pursuant to CPLR 3211(a)(3) and (4) to dismiss the [C]omplaint insofar as asserted against him on the grounds that a prior action was pending between the same parties for the same cause of action, and that [Wells Fargo] lacked standing.

\*\*\*

By order entered October 17, 2014, the Supreme Court denied [Plaintiff Joseph P. Leonardo's] May 2014 motion without prejudice to renew. [Plaintiff Joseph P. Leonardo] then moved for leave to renew the May 2014 motion. By order dated February 23, 2015, the [C]ourt granted [Wells Fargo's] motion, inter alia, for summary judgment on the [C]omplaint, to strike [Plaintiff Joseph P. Leonardo's] answer, and for an order of reference, and denied [Plaintiff Joseph P. Leonardo's] cross motion, in effect, pursuant to CPLR 3211(a)(3) and (4) to dismiss the complaint insofar as asserted against him on the grounds that a prior action was pending between the same parties for the same cause of action, and that [Wells Fargo] lacked standing. In a second order dated February 23, 2015, the [C]ourt, among other things, granted those branches of [Wells Fargo's] motion which were for summary judgment on the [C]omplaint, to strike [Plaintiff Joseph P. Leonardo's] answer, and for an order of reference, and referred the matter to a referee to ascertain the amount due on the mortgage loan. By order entered February 25, 2015, the [C]ourt denied [Plaintiff Joseph P. Leonardo's] renewed motion pursuant to CPLR 3211(a)(4) to dismiss the [C]omplaint insofar as asserted against him on the ground that a prior action was pending between the same parties for the same cause of action.

(*Id.* at 3-4.) The Court reasoned that because there was no longer another action pending between the parties for the same cause of action (*i.e.,* the Supreme Court granted Wells Fargo's motion to discontinue the 2010 Foreclosure Action), the Supreme Court properly denied Plaintiff Joseph P.

Leonardo's motion to dismiss. (*Id.* at 4.)[4] The Court further held Wells Fargo established standing to commence the 2013 Foreclosure Action because Wells Fargo showed that "it was the holder of the [underlying] note prior to the commencement of the [A]ction." (*Id.*)

After Wells Fargo was awarded judgment in the 2013 Foreclosure Action, Plaintiffs filed thirteen (13) motions attempting to either reargue the merits of the case or amend the judgment entered in favor of Wells Fargo, all of which were denied by the state court judge, including Plaintiffs' Order to Show Cause in which they raised the claims now before this Court. (*See* ECF No. 176-5 at 7-14, 16, 18, 20-21, 25.) In response, Plaintiffs were sanctioned by the state court for filing superfluous motions. (*See* ECF No. 176-9.) The 2013 Foreclosure Action remains pending in state court, however, Wells Fargo is no longer a party, as the state court entered an Order substituting U.S. Bank Trust National Association, as Trustee of the LB Cabana Series IV Trust, as Plaintiff. (*See id.*)

Prior to the Appellate Division's 2018 decision, Plaintiffs filed suit on May 20, 2016 against Defendants Druckman and Wells Fargo in the Nassau County Supreme Court, primarily asserting Wells Fargo wrongfully foreclosed their Property, and Druckman, as an agent for Wells Fargo, filed an "abusive" Notice of Pendency on the Property and commenced a wrongful

---

[4] The Court stated: "The appeals from the orders entered October 17, 2014, and February 25, 2015, and from so much of the first order dated February 23, 2015, as denied that branch of [Plaintiff Joseph P. Leonardo's] cross motion, which was, in effect, pursuant to CPLR 3211(a)(4) to dismiss the complaint insofar as asserted against him on the ground that a prior action was pending between the same parties for the same cause of action are dismissed as academic, since the Supreme Court subsequently, by order dated October 29, 2015, granted [Wells Fargo's] motion to discontinue the 2010 [Foreclosure] [A]ction[.]" (*Id.*) (citing *Van Bron Corp. v. Gier's Farm Serv., Inc.*, 710 N.Y.S.2d 262 (N.Y. App. Div. 4th Dep't 2000)) ("Defendants appeal from an order of Supreme Court denying their motion to dismiss this action pursuant to CPLR 3211 (a) (4) on the ground that there is another action pending between the parties for the same cause of action in Supreme Court, Chautauqua County, which was commenced by defendants the day before this action was commenced. After the order was entered, however, the Chautauqua County action was dismissed, and no appeal was taken from the order dismissing that action. Because there is no longer another action pending between the parties for the same cause of action, the issue raised herein is moot.").

foreclosure action against Plaintiffs (hereafter, the "2016 Collateral Action"). (ECF No. 176-11 at 1-2.) Specifically, the 2016 Collateral Action alleged: (i) "negative credit reporting" (First Cause of Action); (ii) abuse of process (Second Cause of Action); and (iii) malicious prosecution (Third Cause of Action) against Wells Fargo and Druckman. (ECF No. 176-12 at 3-4.) "These claims all relate[d] to alleged violations of RPAPL § 1301, CPLR §§ 6512, 6516, and 3408, and the proceedings in the [2010] and [2013] Foreclosure Actions." (*Id.*) On March 1, 2017, the Nassau County Supreme Court dismissed all Counts asserted by Plaintiffs in the 2016 Collateral Action Complaint with prejudice pursuant to CPLR § 3211 (a)(1)(5) and (7), *res judicata*, and collateral estoppel. (*Id.* at 7, 10-12.) Relevant here, the Court found:

> [Plaintiffs] First and Second Causes of Action are barred under CPLR § 3211(a)(5) *by res judicata* and collateral estoppel. They arise out of the same transaction or occurrence that formed the basis of the claims litigated in the [2013] Foreclosure Action. The Plaintiffs and Wells Fargo were parties to the prior action; and a Judgment of Foreclosure and Sale was issued in that action. The Judgment of Foreclosure and Sale was final and on the merits. A judgment entered by a trial court is final for the purposes of *res judicata* and collateral estoppel even if, as in the within proceeding, an appeal is pending.

> \*\*\*

> In the First Cause of Action of their Complaint, the Plaintiffs refer to the [2013] Foreclosure Action as 'wrongful' or 'unlawful.' To the extent that the Plaintiffs' First Cause of Action is for 'wrongful foreclosure,' it fails as a matter of law: by entering the Judgment of Foreclosure and Sale, the Court has already determined that the action was proper. The documentary evidence (the Judgment of Foreclosure and Sale) refutes [Plaintiffs'] allegations, establishing a defense as a matter of law. There is no evidence that Wells Fargo commenced the [F]oreclosure [A]ctions with the intent to do harm without excuse or justification. On the contrary, Wells Fargo has the legal right to bring foreclosure actions to collect a debt due and owing.

(*Id.*) (internal citations omitted) (cleaned up).

## II.   **Procedural History**

This case has a protracted and somewhat tortured procedural history.  It is reminiscent of the lyrics, "what a long, strange trip it's been."[5]  Plaintiffs originally commenced this action on August 23, 2021 in the United States District Court for the Southern District of New York against Defendants Wells Fargo, Druckman, and Rushmore alleging violations of: (i) the FDCPA, (ii) New York State Real Property Actions and Proceedings Law ("RPAPL") § 1501(4); (iii) RPAPL § 1503; and (iv) civil conspiracy to violate the FDCPA. Plaintiffs also sought relief for violations of the New York Codes, Rules, and Regulations ("NYCRR") § 130-1.1(a).[6] (ECF No. 1.) Upon commencement, this action was transferred from the Southern District to this Court on August 25, 2021. (ECF No. 3.) Thereafter, Wells Fargo, Rushmore, and Druckman separately filed letter motions requesting leave to file motions to dismiss Plaintiffs' Complaint for failure to state a claim on October 11, 2021, November 9, 2921, and November 18, 2021, respectively. (ECF Nos. 13, 20, 32.) Judge Joan M. Azrack[7] waived the pre-motion conference requirement and permitted Defendants to file their motions to dismiss on January 21, 2022. (*See* Electronic Order dated January 21, 2022.)

On March 14, 2022, Rushmore, Wells Fargo, and Druckman separately filed notices of motions to dismiss. (ECF Nos. 47-49.)  However, on November 2, 2022, Plaintiffs filed a motion

---

[5] *Truckin'*, Grateful Dead (1970).

[6] NYCRR § 130-1.1(a) provides: "The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Part. This Part shall not apply to town or village courts, to proceedings in a small claims part of any court, or to proceedings in the Family Court commenced under Article 3, 7 or 8 of the Family Court Act."

[7] This case was reassigned to Judge Merchant on July 5, 2023. (*See* Electronic Order dated July 5, 2023.)

for leave to amend the complaint. (ECF No. 87.) The motions to dismiss filed by Rushmore, Wells Fargo, and Druckman were subsequently denied as moot in light of Plaintiffs' intention to file an Amended Complaint. (ECF No. 87.) On December 19, 2022, Plaintiffs filed their Second Amended Complaint against Druckman, Rushmore, Wells Fargo, USB, SN, Spurs Capital, and Siller, alleging: (i) violations of the Fourteenth Amendment, 42 U.S.C. § 1983, and the ADA (as against Defendants Druckman, Rushmore, Wells Fargo, and Siller); (ii) fraud upon the courts; (iii) breach of good faith and fair dealing (as against Defendant Wells Fargo only); (iv) violations of FDCPA; and (v) intentional infliction of emotional distress. (ECF No. 92.)  On March 23, 2023, Defendant Spurs Capital filed a motion for pre-motion conference to dismiss Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 111.) Judge Azrack subsequently referred all pretrial proceedings, non-dispositive motions, and pre-motion conference letters, as well as any dispositive pretrial motions, to undersigned for a Report and Recommendation ("R&R") on May 8, 2023. (*See* Electronic Order Dated May 8, 2023.)

On May 25, 2023, Defendants Wells Fargo, Druckman, USB, Rushmore, Spurs Capital, Rendon, and Gonzalez filed a letter motion for pre-motion conference for leave to file a motion to dismiss Plaintiffs' Second Amended Verified Complaint with prejudice. (ECF No. 122.) Following a Status Conference with the parties on May 30, 2023, the undersigned granted Plaintiffs leave to file the Third Amended Complaint and set a briefing schedule on Defendants' anticipated motion to dismiss the Third Amended Complaint ("TAC"). (ECF Nos. 124-125.)[8] Plaintiffs filed their TAC against Wells Fargo, USB, Druckman, Rushmore, SN, Spurs Capital, Siller, FV, Nardolillo, Realty Advisors, Rendon, and Gonzalez on June 30, 2023, alleging: (i)

---

[8] On May 31, 2023, the Court stayed all proceedings pending the resolution of Defendants' anticipated Motion to Dismiss, and ordered the parties to not make any "further substantive filings related to the merits of this case or as to discovery in this action until the Court has issued an [R&R]" on said Motion. (*See* ECF Nos. 125, 175.)

violations of the Fourteenth Amendment, 42 U.S.C. § 1983, and the ADA ("Count I"); (ii) fraud upon the courts ("Count II"); (iii) breach of good faith and fair dealing (as against Defendant Wells Fargo only) ("Count III"); (iv) violations of the NYSOCCA (as against Defendants FV, Gold, Nordolillo, and Siller only) ("Count IV"); (v) malicious and injurious falsehood (as against Defendants Spurs Capital, Realty Advisors, Rendon and Gonzalez only) ("Count V"); (vi) violations of the FDCPA ("Count VI"); (vii) perjury/subordination of perjury and false swearing (as against Defendants Wells Fargo, USB, Druckman, Rushmore, Spurs Capital, FV, and Gold only) ("Count VII"); and (viii) intentional infliction of emotional distress ("Count VIII"). (ECF No. 136.)

Specifically, with respect to Count I, Plaintiffs contend all Defendants[9] violated § 1983, the ADA, and Plaintiffs' Fourteenth Amendment rights through their "tireless" litigation of the 2013 Foreclosure Action. (*See id.* at ¶¶ 81-108.) The crux of Plaintiffs' first Count is that they were "disparately treated," denied "due process" and "equal treatment under the law," and their "immunities [were] disregarded" when Defendants conspired with state actors to pursue "duplicative" foreclosure actions (*i.e.*, the 2010 and 2013 Foreclosure Actions) causing Mr. Leonardo to have a stroke, become legally blind, and "disabled," as defined by the ADA. (*Id.* at ¶¶ 83-90.) Count II alleges Defendants Druckman, Wells Fargo, Rushmore, SN, Spurs Capital, Siller, and USB "perpetrated a fraud upon the court" to obtain a favorable ruling in the 2013 Foreclosure Action. (*Id.* at ¶ 109.) Plaintiffs assert Druckman played a part in the alleged fraud by falsifying affidavits and presenting false paperwork in connection with the Action. (*Id.* at ¶ 112.) Plaintiffs further allege Druckman, Wells Fargo, Rushmore, SN, Spurs Capital, and Siller committed fraud upon the court by "acting in concert" to "get around" the state court's stay of

---

[9] While Plaintiffs initially allege Count I violations apply to all Defendants, they later concede a "possible exception of [Defendants] SN and Spurs [Capital]." (ECF No. 136 ¶ 82.)

resolution. (*Id.* at ¶¶ 122-23.) Wells Fargo and Rushmore are also allegedly at fault for passing the loan and servicing to USB, SN, and Spurs Capital. (*Id.* at ¶ 124.)

Count III alleges Wells Fargo breached the implied covenant of good faith and fair dealing by deliberately filing duplicative foreclosure actions, and by allowing Druckman to file falsely sworn affidavits. (*Id.* at ¶¶ 134-35, 137.) Count IV alleges Defendants FV, Gold, Nordolillo, and Siller violated the NYSOCCA by commencing the 2013 Foreclosure Action prior to decelerating the 2010 Foreclosure Action. (*Id.* at ¶ 143.) Count V alleges Defendants Spurs Capital, Realty Advisors, the listing agent of the foreclosed Property, and their employees Rendon and Gonzalez committed malicious and injurious falsehood by "diseminat[ing] [false] data and information" to the public and "harass[ing]" Plaintiffs via the United States Postal Service regarding the foreclosed Property. (*Id.* at ¶¶ 151-52.) Count VI alleges Rushmore, Druckman, SN, and Spurs Capital violated the FDCPA by attempting to collect debt after the statute of limitations had run. (*See id.* at ¶ 160-66.) Count VII alleges Wells Fargo, USB, Druckman, Rushmore, Spurs Capital, Gold, and FV committed perjury by "conspir[ing] to violate the Plaintiffs' Civil and Constitutional Rights under the color of law," and falsely "swearing in affidavits and in documents that are part of the public record" in 2010 Foreclosure Action, the 2013 Foreclosure Action, the 2016 Collateral Action, and the instant case. (*Id.* at ¶ 170-71.) Finally, Count VIII alleges all Defendants committed the tort of IIED by litigating the 2013 Foreclosure Action, which, Plaintiffs claim, caused Mr. Leonardo to suffer a stroke and otherwise "belabor[ed]" his "health" and "eyesight." (*Id.* at ¶ 175-88.)

On October 27, 2023, Defendants Wells Fargo, Druckman, USB, Rushmore, Spurs Capital, Rendon, and Gonzalez (hereafter, the "Wells Fargo Defendants" or "Defendants") filed a Joint Motion to Dismiss Plaintiffs' TAC for Failure to State a Claim and for Lack of Subject Matter

Jurisdiction. (ECF No. 175, 176, 177.) Plaintiffs filed their Opposition to Defendants' Motion to Dismiss on October 27, 2023. (ECF No. 179.) Notwithstanding the Court's stay of proceedings pending the outcome of the Motion to Dismiss, Plaintiffs filed a second Response in Opposition to Defendants' Joint Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction on November 29, 2023, which the undersigned "construed as a sur-reply to the Wells Fargo Defendants' Motion to Dismiss" (hereafter, "Plaintiffs' Sur-Reply"). (ECF Nos. 196, 199.)

On December 11, 2023, Judge Merchant referred the Wells Fargo Defendants' Motion to Dismiss to the undersigned for an R&R. (*See* Electronic Order dated December 11, 2023.) On January 10, 2023, at a Conference before the undersigned, Plaintiffs agreed to withdraw their claims against Defendants Gold, Nardolillo and FV. (ECF No. 199.) The undersigned additionally directed the Wells Fargo Defendants to file any opposition to Plaintiffs' Sur-Reply on or before February 7, 2024. (*Id*.) On January 18, 2024, Defendants FV, Gold, and Nardolillo were dismissed from the action without prejudice pursuant to a Stipulation of Dismissal. (ECF No. 201.) On February 7, 2023, the Wells Fargo Defendants filed their Reply in Support of their Joint Motion to Dismiss and in Opposition to Plaintiffs' Sur-Reply. (ECF No. 202.)

III.    **The Parties' Contentions**

A.  **The Wells Fargo Defendants' Motion to Dismiss**

In support of their Motion to Dismiss, the Wells Fargo Defendants argue: (i) this Court lacks subject matter jurisdiction to hear Plaintiffs' claims pursuant to the doctrines of *Rooker-Feldman*, *Colorado River*, *Younger* Abstention, and *Res Judicata*; and (ii) that Plaintiffs fail to state a claim on all Counts asserted in the Complaint. (*See generally*, ECF No. 177.) *First*, the Wells Fargo Defendants assert that this Court lacks subject matter jurisdiction pursuant to the

*Rooker-Feldman* doctrine[10] because (i) Plaintiffs lost in the 2013 Foreclosure Action, (ii) Plaintiffs complain of injury caused by the judgment in the 2013 Foreclosure Action, (iii) Plaintiffs seek a declaration that the 2013 Foreclosure Action judgment was wrongly decided, and (iv) judgment in the 2013 Foreclosure Action was entered before Plaintiffs commenced the instant action. (*Id.* at 5-6.) The Wells Fargo Defendants maintain that Second Circuit courts have "consistently held that any attack on a judgment of foreclosure and sale is clearly barred by the *Rooker-Feldman* Doctrine." (*Id.* at 5) (citing *Feinstein v. The Chase Manhattan Bank*, No. 06-CV-1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006)). In sum, the Wells Fargo Defendants contend that because Plaintiffs' claims are intertwined with the pending state court foreclosure litigation, and any judgment on the claims before this court would "'effectively require [this Court] to vacate the [Judgment of Foreclosure and Sale] issued by the [New York Supreme Court,]'" such review and reversal of judgments rendered by state courts violates the *Rooker-Feldman* Doctrine. (ECF. No. 177 at 4-6.)

*Second,* Defendants argue that Plaintiffs' claims are barred by the *Colorado River* Doctrine because: (i) the state court has assumed jurisdiction, (ii) this forum is less convenient for the parties given the substantial litigation in state court, (iii) dismissing the action will avoid "piecemeal litigation," (iv) the 2013 Foreclosure was filed before this action and judgment was entered in favor of Wells Fargo, (v) this action alleges issues concerning the validity of the foreclosure that has already been litigated in the foreclosure proceedings, and (vi) New York's laws concerning

---

[10] As explained further below, *see infra* Section II A, "The Second Circuit has established four requirements for applying the *Rooker-Feldman* Doctrine: (1) the federal court plaintiffs must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the District Court to review and reject that judgment; and (4) the state court must have rendered judgment before the issue is brought before the federal district court." *See, e.g. Hablock v. Albany County Bd. of Elections,* 422 F.3d 77, 83 (2d Cir. 2005).

foreclosure actions are an adequate safeguard for Plaintiffs' federal rights.[11] (ECF No. 177 at 6-7.) *Third,* Defendants argue that Plaintiffs' claims are barred by the *Younger Abstention* Doctrine because the 2013 Foreclosure Action remains pending in state court. (*Id*. at 7.) As such, Defendants assert Plaintiffs have an open avenue in state court to bring these allegations against Defendant. (*Id*.) *Fourth,* Defendants contend that Plaintiffs' claims are barred by *res judicata* because the claims challenge Wells Fargo's right to foreclosure which was adjudicated in the 2013 Foreclosure Action. (*Id*. at 8.) Further, the Judgment of Foreclosure and Sale entered into in the 2013 Foreclosure Action constitutes a final adjudication on the merits, Plaintiffs and Wells Fargo were parties to the 2013 Foreclosure Action, and the claims raised were – or could have been – raised in the prior action. (*Id*. at 8-9.) Moreover, Defendants assert that "Plaintiff[s] have already had a prior action dismissed with prejudice based on *res judicata*." (*Id*. at 9) (citing ECF No. 176-11, 176-12.)

Defendants additionally assert their Motion to Dismiss should be granted because Plaintiffs fail to state a claim for relief on all Counts asserted in the Complaint. (*Id*. at 9.) *First,* Defendants assert that Plaintiffs failed to state a claim for Fourteenth Amendment and Section 1983 violations because Defendants are not state actors, no exception to the state action doctrine applies, and Defendants were not acting under the color of the law. (*Id*. at 9-10.) Defendants opine that filing the state foreclosure action does not equate to state action and "[t]he bare statement that Defendants conspired with undisclosed state actors is not enough to support a claim for relief." (*Id*. at 10.)

---

[11] Defendants state that "[t]he threshold issue for *Colorado River* abstention is whether the two actions are 'parallel.'" (ECF No. 177 at 6) (quoting *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). However, as explained further below, *see infra,* Section II.B, undersigned finds that Defendants do not establish that the state foreclosure action and the federal claims before the Court are "parallel" before assessing the *Colorado River* abstention factors.

Further, Defendants note that Plaintiffs did not allege any exceptions to the state action doctrine.[12] (*Id*. at 10.) Defendants maintain Plaintiffs' Section 1983 claims "amount to nothing more than conclusory allegations" which alone do not prove Defendants was a "'willful participant in joint action with the State or its agents.'" (*Id*. at 10.)

Next Defendants argue Plaintiffs fail to state a claim for fraud. (*Id*. at 13.) Specifically, Defendants argue that Plaintiffs fail to plead with particularity and that the claims are time barred. (*Id*. at 12-14.) Defendants posit Plaintiffs' allegations of fraud are "barebones" because "Plaintiffs do not allege what misrepresentations they have relied on nor how those misrepresentations have caused them harm." (*Id*. at 14.) Defendants argue Plaintiffs' fraud claim is time barred because the claim stems from the 2010 Foreclosure Action, not the 2013 Foreclosure Action. (*Id*.)[13] *Third,* Defendants contend Plaintiffs' claim of breach of duty of good faith and fair dealing fails because neither the filing of the 2010 Foreclosure Action nor the 2013 Foreclosure Action destroyed Plaintiffs' rights under the mortgage agreement. (*Id*. at 15.) Instead, Defendants assert that by filing the foreclosure action, they were exercising their own protected rights under the mortgage agreement. (*Id*.)

*Fourth*, Defendants maintain that Plaintiffs claim for relief under the NYSOCCA fails because private individuals cannot bring a claim under state penal law. (*Id*. at 16.) Moreover,

---

[12] Defendants identify that "[p]rivate entities may only be held liable for constitutional violation sunder the state action doctrine in three circumstances: '(i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the entity to take particular action, or (iii) when the government acts jointly with the private entity.'" (*Id*. at 10) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019)).

[13] Defendants argue that "a claim based on fraud must be commenced within the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiffs' claims discovered the fraud, or could with reasonable diligence have discovered it[,]" and, because the six-year period began at the time fraud was alleged and the two-year period began to run at the date of actual imputed discovery, Plaintiff's fraud claim is time barred. (*Id*. at 14) (internal citations omitted).

Defendants argue that this allegation is merely a pretext for relitigating the timeliness of the 2013 Foreclosure Action. (*Id*.) Defendants further maintain the 2013 Foreclosure Action is not barred by the Foreclosure Abuse Prevention Act ("FAPA") because no private cause of action exists under the state law. (*Id*. at 17.) *Fifth*, Defendants contend Plaintiffs fails to state a claim for malicious and injurious falsehood against Defendant Spurs Capital because Plaintiffs did not allege facts to support the required elements of the cause of action or allege special damages with sufficient particularity. (*Id*. at 17-18.) Specifically, Defendants reject Plaintiffs' claim that Judgment of Foreclosure and Sale constitutes injurious falsehood and/or malicious falsehood because, Defendants argue, the Judgment is a valid final order of the State Court and is therefore true as a matter of law. (*Id.* at 17-19.)

*Sixth*, Defendants assert Plaintiffs fail to state a claim under the FDCPA because the FDCPA does not apply to Defendants, Plaintiffs fail to identify how the violation occurred, and the claim is otherwise time-barred. (*Id*. at 21.) Defendants argue the FDPCA applies to debt collectors, not creditors,[14] and, because Defendants are creditors seeking to collect their *own* debts and loan services – not *another's* debt –the statute is inapplicable as to the Wells Fargo Defendants. (*Id.* at 20-21.) Defendants further argue that even if the FDCPA applied to Defendants, Plaintiffs do not "allege that they were subject to a collection activity arising from a consumer debt, that Defendants are debt collectors as defined by the FDCPA, or that Defendants participated in an act or omission prohibited by the FDCPA." (*Id*. at 21.) Finally, Defendants contend Plaintiffs' FDCPA

---

[14] The FDCPA defines "debt collectors" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due another." *See* U.S.C. § § 1692e – 1692g.

claim is untimely because the one-year statute of limitations expired in 2013.[15] (*Id*. at 22.) *Seventh*, Defendants argue Plaintiffs do not have standing to bring a civil claim for perjury because "private citizens lack standing to assert cognizable claims under state criminal law," and, because Plaintiffs are private citizens and their allegations "seemingly arise" under New York's Penal Code, Defendants contend Plaintiffs' perjury claim must be dismissed. (*Id*. at 22.) *Eighth*, Defendants contend Plaintiffs fail to state a claim for intentional infliction of emotional damage ("IIED") because the statute of limitations has run, and Plaintiffs' TAC does not otherwise allege facts sufficient to meet the "'extreme and outrageous'" threshold for egregious debt collection efforts. (*Id*. at 23.) Defendants further note that while Plaintiffs' foreclosure may have caused Plaintiffs to suffer severe emotional distress, Defendants' conduct falls "incredibly short" of "atrocious" as contemplated by precedent. (*Id*. at 24.)

### B. **Plaintiffs' Response in Opposition**

In Opposition to Defendants' Motion to Dismiss under FRCP 12(b)(1), Plaintiffs argue the court has subject matter jurisdiction because "Plaintiffs have properly invoked this Court's jurisdiction." (ECF No. 179 at 4.) *First*, relying primarily on the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 283 (2005) ("*Exxon*")[16], Plaintiffs contend the *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction. (*Id*.) Plaintiffs also argue the *Rooker-Feldman* doctrine does not apply because the TAC does not allege injury

---

[15] Plaintiffs allege their FDCPA claim dates back to May 2012 and this action was filed in August 2021. (*See generally*, ECF No. 136.)

[16] *Exxon* held the *Rooker-Feldman* doctrine and the Supreme Court's appellate jurisdiction over state court judgments does not prevent a district court from exercising subject matter jurisdiction simply because party attempts to litigate in federal court a matter previously litigated in state court; if a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that state court has reached in case to which he was party, then there is jurisdiction and state law determines whether defendant prevails under principles of preclusion. *Id*. at 293 (citing 28 U.S.C.A. § 1257).

by the state court judgment. (*Id.* at 6.) Specifically, Plaintiffs argue *res judicata* and collateral estoppel "fail miserably" to prove the district court's lack of subject matter jurisdiction because Wells Fargo is not the sole defendant in the federal action and Plaintiffs were "prohibited from bringing their claims against Wells Fargo in the state court." (*Id.* at 9.) Plaintiffs maintain that the case cannot be dismissed against all Defendants under *res judicata* because Wells Fargo is the only overlapping party from the state court proceedings. (*Id.* at 9-10.)

*Second*, Plaintiffs argue the *Colorado River* doctrine does not prevent the Court from having jurisdiction because Defendants "don't bother showing how all six [factors] apply." (*Id.*) Plaintiffs further contend "[t]his forum is not less convenient" because state court procedures are inadequate to protect Plaintiffs' federal rights. (*Id.* at 7.) Plaintiffs maintain concurrent state and federal proceedings do not bar the district court from having jurisdiction to hear their claims and "mere overlap of subject matter is not sufficient to make an action concurrent." (*Id.*) Plaintiffs emphasize that both the parties and issues are different in the federal and state court proceedings, and that they were unable to bring federal claims into state court because of their position as Defendants in the state proceedings. (*Id.* at 8.) *Third,* with respect to the *Younger Abstention* doctrine, Plaintiffs maintain the rule does not support dismissal of their claims because Plaintiffs cannot raise new claims on appeal in the pending state court proceedings, and, therefore, Plaintiffs do not have an "open avenue in state court" to bring these claims as Defendants suggest. (*Id.*)

Plaintiffs additionally argue Defendants' Motion under 12(b)(6) should also be denied because Plaintiffs have satisfied the pleading requirements of FRCP Rule 8(a), and Defendants acted under the color of the law. (*Id.* at 12-13.) *First,* Plaintiffs claim they have adequately stated a claim for relief under Section 1983 and the Fourteenth Amendment because they have "clearly alleged that the state court, and the state court personnel worked in conspiracy with, or colluded

18

with [D]efendants, and were thereby transformed into entities who have violated Plaintiffs' rights under color of law or color of authority." (*Id*. at 12.) *Second,* Plaintiffs argue their fraud upon the court claim withstands Defendants' Motion to Dismiss because "[t]he behavior of the [D]efendants has been so egregious, and so methodical, that it should shock the conscious of the Courts." (*Id*. at 13.) Plaintiffs contend their fraud upon the court claim cannot be time barred because "[w]hen it comes to the integrity of the court being compromised, there is no statute of limitations." (*Id*. at 15.) *Third,* Plaintiffs assert their breach of good faith and fair dealing claim is well pleaded because "Wells Fargo and Druckman used falsely sworn Affidavits and filed a second foreclosure action without deaccelerating the loan, and without legally discontinuing the first filed action, attempting to get around the statute of limitations." (*Id*. at 15-16.)[17]

*Fourth,* Plaintiffs argue their malicious and injurious falsehood claims survive Defendants' motion to dismiss because Defendants Spurs Capital, Rendon, Gonzalez and Realty Advisors, entered data and information into the public record, and used the United States Postal Service "to harass and falsify records, to harm and injury Plaintiffs." (*Id*. at 17.) *Fifth,* Plaintiffs argue the FDPCA applies to Defendants because Defendants are attorneys attempting to collect delinquent debt, which, according to Plaintiffs, makes Defendants "debt collectors" under the FDCPA. (*Id*. at 17-19.) Plaintiffs maintain their FDCPA claim falls within the statute of limitations because Defendants' "[debt collection] activities continue, even today." (*Id*. at 19.) *Seventh,* Plaintiffs

---

[17] Plaintiffs do not address the merits of Defendants' arguments for dismissal of Plaintiffs' claims for violations for NYSOCCA and FAPA, and for IIED. Plaintiffs merely state their NYSOCCA and FAPA claims cannot be dismissed because Defendants rely on the "falsely sworn Edoziem Declaration" submitted by Defendants in support of their Motion to Dismiss. (*Id*. at 17.) Plaintiffs further state in a conclusory fashion that their IIED claim "endures" Defendants' Motion. (*Id*. at 20.)

concede their potential lack of standing regarding their perjury claim, but nonetheless argue Defendants' Motion to Dismiss fails because such claim is "true." (*Id.* at 20.)

Plaintiffs reiterate their claims "are not a collateral attack on a prior state court foreclosure action." (*Id.* at 2.) Rather, Plaintiffs argue Defendants "distort[ed]" the actual events of the 2013 Foreclosure Action, namely that the 2013 Foreclosure Action was commenced before the 2010 Foreclosure Action was discontinued. (*Id.* at 2.) Plaintiffs request this Court "protect Plaintiffs' right to a meaningful opportunity for appellate review[,] not [to] challenge the merits of the state case." (*Id.* at 5.) Plaintiffs maintain their avenues in state court are unavailable due to corruption and disparate treatment. (ECF No. 179 at 5.)[18] Finally, Plaintiffs contend Defendants improperly raise affirmative defenses in their Motion to Dismiss instead of responsive pleadings. (*Id.* at 21.)

### C. Defendants' Reply in Support

In their Reply, Defendants maintain Plaintiffs' TAC should be dismissed under FRCP 12(b)(1) because this Court lacks subject matter jurisdiction under the *Rooker-Feldman*, *Younger Abstention*, and *Colorado River* doctrines. (ECF No. 178 at 1.) *First,* Defendants argue Plaintiffs failed to rebut the effect *Rooker-Feldman* has on this action. (*Id.* at 2.) Defendants highlight Plaintiffs' history of failed attempts in state court to challenge the 2013 Foreclosure Action. (*Id.*) Defendants remind the Court that Plaintiffs expressly asked this Court to review the 2013 Foreclosure Action Judgment, despite having filed numerous appeals and twenty-seven motions on the same issue. (*Id.* at 2, 4.) Defendants contend Plaintiffs' argument that Druckman failed to

---

[18] Plaintiffs assert that "[w]hen state courts have become so corrupt, that Plaintiffs cannot be treated the same as other[s] in the same position, and disabled persons are treated disparately, the federal courts are supposed to protect the people from such corruption and disparate treatment of the elderly and disabled. Plaintiffs cannot sue the state court, but parties working under the protection of, and in collusion with, the state court[.]" (*Id.* at 5.)

serve all orders in the 2013 Foreclosure Action is "patently frivolous" because such argument is unsupported by evidence. (*Id*. at 3-4.)

As the *Rooker-Feldman* doctrine prevents federal courts from hearing direct appeals of state court decisions, Defendants maintain this Court lacks subject matter jurisdiction to hear Plaintiffs' claims in the instant case. (*Id*. at 2.) Defendants further argue Plaintiffs' Notice of Appeal filed following denial of Plaintiffs' post-judgment Order to Show Cause does not preclude the application of the *Rooker-Feldman* doctrine in the Second Circuit. (*Id*. at 5.) Defendants assert the Second Circuit has not interpreted *Exxon* as limiting *Rooker-Feldman*'s applicability to cases where all state proceedings, including appeals, have ended. (*Id*.) Defendants maintain *Rooker-Feldman* applies to the "appeals of the final judgment orders, which has already been completed in the 2013 Foreclosure Action" – not post-judgment orders. (*Id*.)

*Second*, Defendants contend Plaintiffs failed to rebut the dismissive effect of the *Colorado River* doctrine. (*Id*. at 6.) Defendants insist Plaintiffs' claims are barred by *Colorado River* because the state court proceedings are "parallel" to this action, and argue that "[a]dding defendants and labeling claims as federal claims does not shield Plaintiffs' [C]omplaint from the doctrine." (*Id*. at 6-8.) Defendants maintain all six factors of the doctrine favor dismissal of the TAC. (*Id*. at 6-7.)

*Third*, Defendants declare the *Younger Abstention* Doctrine requires this Court to dismiss Plaintiffs TAC because: (i) "the 2013 Foreclosure Action is still subject to further challenge and that they have filed an order to show cause and an appeal further seeking to challenge the propriety of the foreclosure[;]" (ii) important state interests are implicated because the 2013 Foreclosure Action concerns the disposition of property; and (iii) Plaintiffs can bring their claims against Defendants in the pending 2013 Foreclosure Action by way of another order to show cause or appeal. (*Id*. at

8-9.) *Fourth,* Defendants claim *res judicata* and collateral estoppel apply to Plaintiffs' claims because Defendants are in privity with the parties in the prior action. (*Id*. at 9.)

Defendants assert that under New York law, "'privity extends to parties who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action.'" (*Id.* at 9) (quoting *Yeiser v. GMAC Mortg. Corp.,* 535 F. Supp 2d 413, 423 (S.D.N.Y 2008)). Further, Defendants note "an agency relationship between parties is sufficient to establish privity for *res judicata*." (*Id*. at 10.) Defendants maintain Plaintiffs' FAPA arguments are "patently meritless" because "Plaintiffs brought a motion to dismiss pursuant to FAPA which was denied by the state court . . . and is now the subject of an appeal." (*Id*. at 11.) Defendants further contend FAPA does not create a private cause of action. (*Id*.)

Defendants additionally argue Plaintiffs' Complaint should be dismissed under FRCP 12(b)(6) because Plaintiffs' claims are barred by *res judicata*, issue preclusion, and applicable statutes of limitation. (*Id*. at 1.) *First,* Defendants argue their collateral estoppel and *res judicata* contentions are both timely and proper arguments to support their 12(b)(6) motion. (*Id*. at 11.) *Second*, Defendants contend Plaintiffs fail to state claim under Section 1983 because the TAC contains only "vague, unsupported conclusory allegations of constitutional violations" and Defendants are not state actors. (*Id*. at 12.) *Third,* Defendants claim Plaintiffs failed to plead fraud with specify and that the claim is otherwise time-barred. (*Id*. at 14.) Specifically, Defendants argue Plaintiffs did not allege what misrepresentations they relied on or how those misrepresentations caused harm. (*Id*. at 15.) Defendants additionally note Plaintiffs' fraud on the court claim stems from the alleged improper commencement of the 2013 Foreclosure Action, and, therefore, the statute of limitations bars the claim. (*Id*. at 15.)

22

*Fourth,* Defendants argue Plaintiffs' claim for breach of the duty of good faith and fair dealing against Wells Fargo is meritless because, according to Defendants, filing a foreclosure action upon a mortgagee failing to pay the amount due and owing does not destroy any right that Plaintiffs were entitled to under the mortgage agreement. (*Id*. at 16.)  *Fifth,* Defendants argue that Plaintiffs claim for violation of NYSOCCA fails because it is "illogical and meritless." (*Id*. at 16.) Defendants emphasize that Plaintiffs do not dispute their lack of standing as a private actor to bring a claim under the penal law. (*Id*.) With respect to Plaintiffs' FAPA allegations, Defendants argue that the FAPA does not entitle Plaintiffs to relief in this case because the law does not create a private cause of action. (*Id*. at 17.) Defendants additionally assert the FAPA claim is "unequivocally barred by *Rooker-Feldman* and *res judicata* because Plaintiffs are asking the [C]ourt to review the judgment issued by the state court and to overturn same." (*Id*.) *Sixth,* Defendants contend Plaintiffs fail to state a claim for malicious and injurious falsehood because Plaintiffs failed to allege required elements of the cause of action with sufficient particularity, including special damages. (*Id*.)

*Seventh,* Defendants argue Plaintiffs fail to state a claim under the FDCPA because: (i) Defendants are exempted from the FDCPA, (ii) Plaintiffs have not stated a claim for violation of the FDCPA, and (iii) the claim is time barred. (*Id.* at 18.) Defendants state that "the Second Circuit has . . . held that both creditors seeking to collect their own debts and their loan servicers are not debt collectors under the FDCPA[,]" and, therefore, creditors like Wells Fargo and USB do not fall into this statutorily defined category. (*Id*.) Defendants note that Defendants Spurs Capital, Gonzalez, and Rendon are not "debt collectors" because Spurs Capital is merely a messenger of information and Gonzalez and Rendon are individuals – not "debt collectors." (*Id*. at 19.) Defendants further note that notwithstanding the statute's limited scope, the TCA "completely fails

to identify how a violation occurred or provide any detailed allegations to support the FDCPA claim against each [D]efendant." (*Id.*) *Eighth,* Defendants argue Plaintiffs do not have standing to bring a civil claim for perjury because Plaintiffs are private citizens and therefore cannot bring a cognizable claim under state criminal law. (*Id.* at 21.) *Ninth,* Defendants argue Plaintiffs fail to state a claim for IIED because Plaintiffs mistake IIED as a remedy for their FDCPA claim, instead of a standalone claim. (*Id.*)

## D. **Plaintiffs' Sur-Reply and Defendants' Response**

In their Sur-Reply, Plaintiffs argue Defendants' lawyers and law firms are liable under the Martin Act[19] and the False Claims Act.[20] (ECF No. 196 at 1-4.) Plaintiffs argue that Defendants and/or their counsel submitted inaccurate records, made false arguments, and failed to establish

---

[19] The Martin Act is an antifraud statute "prohibit[ing] various fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001). New York Courts are steadfast that this law provides no implied private right of action. *See CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116 (N.Y. 1987) ("There is no implied private cause of action for violations of the antifraud provisions of the Martin Act. An implied private action is not consistent with the legislative scheme underlying the Martin Act. The specific purpose of the statute was to create a statutory mechanism in which the Attorney-General would have broad regulatory and remedial powers to prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public and, thereafter, if appropriate, to commence civil or criminal prosecution."). To this end, the undersigned recommends dismissal of any of Plaintiffs' claims made under the Martin Act.

[20] "The False Claims Act is a federal statute which allows a private individual, or 'whistleblower,' who has knowledge of past or present fraud on the United States government, to sue on behalf of the government to recover civil penalties and triple damages." *See* 78 Am. Jur. Proof of Facts 3d 357 (2004). *Pro se* litigants cannot pursue *qui tam* actions under the Act because these actions are brought on behalf of the United States – not on behalf of a plaintiff's own interests. *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("[W]hile the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States. Accordingly, as the United States remains the real party in interest in *qui* tam actions, the case, albeit controlled and litigated by the relator, is not the relator's own case as required by 28 U.S.C. § 1654, nor one in which he has an interest personal to him. Because relators lack a personal interest in False Claims Act *qui* tam actions, we conclude that they are not entitled to proceed *pro se*."). As such, the undersigned likewise recommends dismissal of any of Plaintiffs' claims made under the False Claims Act.

that *Rooker Feldman* and *Youngster Absention* bar this lawsuit. (*Id*.) In response, Defendants maintain Plaintiffs' arguments are conclusory and an inaccurate and unfair summation driven by Plaintiffs' own grievances regarding the foreclosure. (ECF No. 202 at 1-2.) Further, Defendants assert Plaintiffs' arguments lack merit because they have no private right of action to prosecute under the Martin Act. (*Id*. at 1) (citing *Broder v Cablevision Sys. Corp*., 418 F.3d 187, 201 (2d Cir. 2005)). Defendants additionally argue that *pro se* litigants may not pursue *qui* tam actions under the False Claims Act. (*Id*.) (citing *Pennicott v. Fed. Nat'l Mortg. Ass'n*, No. 21 CIV. 4575 (LGS), 2022 WL 20399723, at *2 (S.D.N.Y. Dec. 2, 2022)).

## DISCUSSION

### I.    The Legal Framework

"When presented with both a motion under 12(b)(1) to dismiss for lack of subject matter jurisdiction and a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action." *Zapotocky v. CIT Bank, N.A*., 587 B.R. 589, 592 (S.D.N.Y. 2018). To prevail against a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), the "plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In considering such a motion, the Court generally "must accept the material factual allegations in the complaint as true[,]" however, it is *not* required to "draw all reasonable inferences in the plaintiff's favor." *Zapotocky*, 587 B.R. at 592.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

The above standards apply to *pro se* complaints, such as the one here, as well, but in a far less rigid manner. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted). When cases involve a *pro se* complaint like here, the Court must interpret the pleading to raise the strongest claim suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011); *Zapotocky*, 587 B.R. at 592–93 (collecting cases) ("The pleadings and allegations of a *pro se* plaintiff must be construed liberally for the purposes of deciding motions pursuant to Rules 12(b)(1) and 12(b)(6)."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted)

("The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest.")

"However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotation marks omitted.)  Notably, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and district courts 'cannot invent factual allegations' that the plaintiff has not pleaded." *Vidurek v. Pollen*, No. 20-CV-6714 (CS), 2021 WL 4066503, at *7 (S.D.N.Y. Sept. 7, 2021) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  Having viewed the pleadings and filings in the most favorable light of Plaintiffs, the undersigned nevertheless concludes that: (i) this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Roker-Feldman* and *res judicata* doctrines; and (ii) Plaintiff fails to state a claim for violations of the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, the FDCPA, the NYSOCCA, breach of good faith and fair dealing, malicious and injurious falsehood, perjury/subordination of perjury and false swearing, and IIED, and, therefore, respectfully recommends the Wells Fargo Defendants' Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6) be granted in its entirety.

## II.   <u>Subject Matter Jurisdiction</u>

As previously mentioned, Defendants move to dismiss Plaintiffs' TAC for lack of subject matter jurisdiction on the grounds that Plaintiffs' claims are barred by the *Rooker-Feldman, Colorado River* and *Younger* abstention doctrines. *See* ECF No. 177 at 4-9. *Preliminarily*, the Court notes that the Supreme Court has articulated that abstention is "'the exception, not the rule,'" as federal courts have a "virtually unflagging obligation" to "hear cases within their jurisdiction." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571

U.S. 69, 77 (2013). With this principle in mind, the undersigned addresses each of Defendants' arguments in turn.

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* abstention doctrine explicitly provides that "[f]ederal courts lack subject matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Inn World Rep., Inc., Leonard C. LaBanco, Plaintiffs-Appellants, Thomas Kiely, Faith Kiely, John E. Morris, Plaintiffs, v. MB Fin. Bank NA, Fifth Third Bank, as successor in interest, Defendants-Appellees.*, No. 21-CV-2911, 2022 WL 17841529, at *3 (2d Cir. Dec. 20, 2022) ("*Inn World*") (internal quotation marks omitted); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing 28 U.S.C. § 1257(a)) ("Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."). "The doctrine applies where: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff seeks district court review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced." *Inn World,* No. 21-CV-2911, 2022 WL 17841529, at *3.

*First*, Plaintiffs "lost in state court" *twice* – in the 2013 Foreclosure Action[21] and the 2016 Collateral Action.[22] In 2013 Foreclosure Action, the Nassau County Supreme Court entered a Foreclosure Judgment resulting from the Foreclosure Action in favor of Defendants and dismissed Plaintiffs' cross motion to dismiss pursuant to RPAPL § 1301 and CPLR §§ 6512, 6516, and 3408.

---

[21] *See Wells Fargo Bank, N.A. v. Leonardo*, 90 N.Y.S.3d 199 (N.Y. App. Div. 2d Dep't 2018).

[22] *See* ECF No. 176-12.

*See* ECF Nos. 176-7 at 2, 176-12 at 3. The Nassau County Supreme Court's Judgment was later affirmed by the Appellate Division, which found that the 2013 Foreclosure Action was proper as the 2010 Foreclosure Action was previously discontinued. *See* ECF No. 176-8. In the 2016 Collateral Action, the Nassau County Supreme Court dismissed Plaintiffs' complaint pursuant to CPLR § 3211 on *res judicata* and collateral estoppel grounds. *See* ECF No. 176-12 at 1-7.

*Second,* the undersigned finds Plaintiffs' federal suit does complain of an injury caused by the Nassau County Supreme Court's judgment – as well as the Appellate Division's affirmation of the judgment – and seeks that judgment's reversal. Plaintiffs complain Wells Fargo wrongfully foreclosed the Property, the foreclosure which resulted from the Nassau County Supreme Court's issuance of the Foreclosure Judgment, and the Appellate Division's subsequent affirmation of that judgment in the 2013 Foreclosure Action, both of which Plaintiff seeks to reverse in the instant action. *See generally* ECF No. 136. *See e.g.,* *Hoblock*, 422 F.3d 77 at 88 ("[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.").

*Third*, in the instant action, Plaintiffs assert claims against Defendants for violations of the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, the FDCPA, the NYSOCCA, breach of good faith and fair dealing, malicious and injurious falsehood, perjury/subordination of perjury and false swearing, fraud upon the courts, and IIED arising out of Defendants' attempted foreclosure of Plaintiffs' property, which was litigated in the 2010 Foreclosure Action, the 2013 Foreclosure Action, and the 2016 Collateral Action, and seeks an order declaring the foreclosure and subsequent eviction prosecuted by Defendants, "void" and of no force and effect, and, therefore, is inviting this Court to review the judgments of the Nassau County Supreme Court and the

Appellate Division in the 2010 Foreclosure Action, the 2013 Foreclosure Action, and the 2016 Collateral Action, and asking it to reject the state court's judgments. *See* ECF No. 136 at ¶ 38; *see also Russo v. GMAC Mortg., LLC*, 549 F. App'x 8, 10 (2d Cir. 2013) (holding Plaintiff's claims were barred by the *Rooker–Feldman* doctrine where Plaintiff lost in state court, his injuries stemmed directly from the state court's foreclosure judgment, and "by seeking a court order prohibiting [Defendant] from taking possession of, or foreclosing on, his property, [Plaintiff's] requested relief required the district court to review and reject the state court's foreclosure judgment.").

*Fourth*, the 2013 Foreclosure Action judgment was entered on November 30, 2015 (ECF No. 176-7 at 2) and was affirmed by the Appellate Division on June 22, 2018 (ECF No. 176-8 at 1), prior to Plaintiffs commencing the instant action on August 23, 2021, and subsequent removal to the Southern District of New York. *See* ECF No. 3. To this end, because Plaintiffs' Complaint "stemmed from [his] dissatisfaction with the outcome of [his] state lawsuit" and the Foreclosure Actions, and because "[a] review of the Complaint would "necessitate an inquiry into the propriety of the state court's resolution" of the foreclosure dispute, the undersigned finds this Court is barred by the *Rooker- Feldman* doctrine from considering Plaintiffs' claims. *Joseph v. Cohen*, 66 F. App'x 278, 280 (2d Cir. 2003); *see also Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 144-45, 146 (E.D.N.Y. 2016) (applying *Rooker-Feldman* where a plaintiff contested a foreclosure sale and lost in state court); *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 334 (E.D.N.Y. 2012) (adopting a report and recommendation recommending dismissal of Plaintiff's complaint that sought to contest an adverse foreclosure and sale judgment).

While Plaintiffs argue that, because their federal action asserts different or additional alleged improper actions by Defendants (*i.e.*, violations of the Fourteenth Amendment, 42 U.S.C.

§ 1983, the ADA, the FDCPA, the NYSOCCA, breach of good faith and fair dealing, fraud upon the courts, malicious and injurious falsehood, perjury/subordination of perjury and false swearing, and IIED), are distinct from their state-court actions, that argument has been previously rejected by courts in this Circuit. *See Niles,* 859 F. Supp. 2d at 334 (internal citations omitted) (finding it irrelevant that plaintiff added parties to the federal action who were not parties to the state action or asserted other alleged improper actions by defendants in the federal action, because "[t]he *Rooker–Feldman* doctrine bars cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); *Hoblock*, 422 F.3d at 87 (holding the same); *see also Joseph*, 66 F. App'x at 280 (rejecting the appellant's argument that her federal action was distinct form her state-court action because the federal action "included additional defendants and asserted other alleged improper actions by defendants"). Accordingly, the undersigned respectfully recommends Plaintiffs' Complaint be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* Doctrine.

## B. *Colorado River* **and** *Younger* **Abstention Doctrines**

Defendants assert the instant action is parallel to and duplicative of Defendants' pending state court litigation, and, therefore, this Court should abstain from hearing the instant case under the *Colorado River* Doctrine. *See* ECF No. 177 at 6. *Preliminarily*, the undersigned notes that because the instant action deals with alleged parallel actions in federal *and* state court—as opposed to overlapping federal actions—the Court is guided by the *Colorado River* abstention doctrine principals as opposed to the prior pending action doctrine.[23] In deciding whether abstention under

---

[23] The *Colorado River* doctrine is distinct from the prior pending action doctrine: the former applies to scenarios where one case is in federal court and one case is in state court and the latter considers staying and/or dismissing a suit in federal court that is duplicative of another federal court suit. *See Simmons v.*

the *Colorado River* doctrine is appropriate, "a district court must first determine whether the federal and state court cases are parallel." *Imbedded Artists Inc. v. Kinchen*, 20-CV-3535 (LDH)(RLM), 2022 WL 356429, at *3 (E.D.N.Y. Feb. 7, 2022) (citations omitted). "Suits are parallel when substantially the same parties are contemporaneously litigating the same issue in another forum." *Id.* (citation omitted). "Perfect symmetry of parties and issues is not required for the federal and state proceedings to be considered parallel . . . [r]ather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Phillips v. Citibank*, N.A., 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (internal quotation marks and citations omitted).

If actions are parallel, then under "'exceptional circumstances,' a federal court may abstain from exercising jurisdiction when . . . state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 813). Such "[a]bstention is an extraordinary and narrow exception to a federal court's duty to exercise its jurisdiction." *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 593 (S.D.N.Y. Sep. 15, 2006) (alteration in original) (quoting *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999)). Indeed, the Second Circuit has explicitly articulated:

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . . This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

---

*Reich*, No. 19-CV-3316 (EK) (ST), 2020 WL 7024345, at *6, n.8 (E.D.N.Y. Nov. 30, 2020) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

*Woodford v. Cmty. Agency of Green Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (alteration omitted) (quoting *Colorado River*, 424 U.S. at 817).

Under *Colorado River*, Courts weigh six factors in determining whether "exceptional circumstances" exist for abstaining when a party files parallel actions in state court and federal court: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) the relative convenience of the forums; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Id.* (quoting *Colorado River*, 424 U.S. at 813, 817) (additional citations omitted). "No single factor is determinative, and the decision whether to abstain is left to the trial court's sound discretion." *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. Jan. 15, 2013) (citations omitted). The burden of persuasion rests on the party *opposing* the exercise of federal jurisdiction. *See Arkwright-Boston Mfrs. Mutual Ins. Co. v. City of N.Y.*, 762 F.2d 205, 210 (2d Cir. 1985).

Here, Defendants implore the Court to dismiss the instant action pursuant to the *Colorado River* doctrine, however, the undersigned finds they fail to establish whether the federal and state court actions are "parallel." *See* ECF No. 177 at 6. In the 2013 Foreclosure Action, Wells Fargo sought a final Judgment of Foreclosure and Sale due to Plaintiffs' failure to comply with their obligations under the mortgage (ECF No. 176-3 at 2), which was entered by the Nassau Supreme Court, and, in turn, Plaintiffs appealed, seeking an order declaring the foreclosure and subsequent eviction prosecuted by Wells Fargo "void" and of no force and effect. *See* ECF No. 176-8. By contrast, in the instant action, Plaintiffs assert violations of § 1983, the Fourteenth Amendment,

the ADA, the FDCPA, the NYSOCCA, fraud upon the courts, breach of the duty of good faith and fair dealing, malicious and injurious falsehood, IIED, and perjury *arising out of* the 2013 Foreclosure Action. To this end, because Plaintiffs numerous issues and claims in the instant federal action not previously raised in the state actions, there is not a "substantial likelihood" that the 2013 Foreclosure Action "will dispose of all claims presented" in the instant case. *Phillips*, 252 F. Supp. 3d at 295 (internal quotation marks and citations omitted). As such, because the threshold parallelism requirement is not met, the undersigned finds the *Colorado River* doctrine does not require this Court to abstain from exercising jurisdiction.

Defendants additionally contend the *Younger* abstention doctrine requires this Court to abstain from exercising jurisdiction due to the pendency of relevant state court proceedings. *See* ECF No. 177 at 6. Pursuant to the *Younger* doctrine, "district courts should abstain from exercising jurisdiction only in three exceptional circumstances" involving: "(1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (internal citation and quotation marks omitted); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013). If a case falls within the three exceptional circumstances, a federal court may then consider additional factors – *i.e.*, whether "there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Sprint*, 571 U.S. at 81 (cleaned up); *see also Falco*, 805 F.3d at 427; *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).

These secondary conditions "[are] not dispositive[,]" rather, "they [are] additional factors appropriately considered by the federal court before invoking *Younger*." *Sprint,* 571 U.S. at 81.

Relevant here, under *Younger*, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments[,]" but, "just as there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts . . . *Younger* abstention does not prevent a federal court from exercising its jurisdiction simply because its decision might contradict a state court decision." *Cavanaugh*, 28 F.4th at 434 (internal citations and quotations omitted). Here, Defendants fail to identify which of the three exceptional circumstances is present such that *Younger* is applicable. *See* ECF No. 177 at 7. Because the case at bar is not a criminal prosecution, civil enforcement proceeding, and does not question the state court's ability to perform its judicial function, the undersigned finds the *Younger* abstention inapplicable here.

### III.    **Failure to State a Claim**

As stated, Plaintiffs brings claims against Defendants for violations of the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, the FDCPA, the NYSOCCA, breach of good faith and fair dealing, fraud upon the courts, malicious and injurious falsehood, perjury/subordination of perjury and false swearing, and IIED. For the reasons stated below, the undersigned finds these claims are barred by the doctrine of *res judicata*, and otherwise fail on the merits.

#### A.    **Plaintiff's Claims are Barred by *Res Judicata***

To the extent that any of Plaintiffs' claims do not fall under *Rooker–Feldman*'s jurisdictional bar, the undersigned finds the claims are barred by the doctrine of *res judicata*.[24] A

---

[24] Defendants initially urge the Court to dismiss Plaintiffs' TAC pursuant to both *res judicata* (claim preclusion) *and* collateral estoppel (issue preclusion); however, the undersigned notes Defendants' Memorandum of Law in Support of their Motion to Dismiss provides no support as to how collateral estoppel is applicable here. *See* ECF No. 177 at 3, 17. Collateral estoppel prevents a party "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."

"federal court must give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir.2009) (internal citation omitted). To successfully prove the affirmative defense of *res judicata*, the party asserting the defense must show: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826(KAM)(JRC), 2023 WL 8283148, at *5 (E.D.N.Y. Nov. 30, 2023) ("*Mendez*") (internal citations omitted) (collecting cases).

Under New York law, *res judicata*, also referred to as "claim preclusion", "bars future litigation of claims that were or could have been raised in a prior proceeding where that prior proceeding resulted in a final judgment on the merits." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146–47 (E.D.N.Y. 2016) ("*Hourani*"). New York applies a transactional approach to *res judicata*, "meaning that 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Id.* at 147 (quoting *JP Morgan Chase Bank*, 822 N.Y.S.2d 122 (N.Y. App. Div. 2d Dep't 2006)). Relevant here, "[t]he pendency of an appeal does not deprive a judgment of preclusive effect under New York law." *Stensrud v. Rochester Genesee Reg'l*

---

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). The Second Circuit has consistently held that issue preclusion applies when four elements are satisfied: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (internal citations omitted). Here, the issues raised in the instant case directly mirror those raised in the 2016 Collateral Action that was dismissed pursuant to CPLR § 3211(a)(5) and (7), and, therefore, the undersigned finds Plaintiffs' claims in the instant action are additionally barred by collateral estoppel. *See* ECF No. 176-12.

*Transportation Auth.*, 669 F. Supp. 3d 186, 190 (W.D.N.Y. 2023), *aff'd*, No. 23-765, 2024 WL 2104604 (2d Cir. May 10, 2024) (citing *Papapietro v. Clott*, No. 22-CV-1318 RPK VMS, 2023 WL 2731687, at *5 (E.D.N.Y. Mar. 31, 2023)); *see also DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003); *Franklin Dev. Co. v. Atl. Mut. Ins. Co.*, 876 N.Y.S.2d 103 (N.Y. App. Div 2d Dep't 2009) ("The rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel"); *Matter of Amica Mut. Ins. Co.*, 445 N.Y.S.2d 820 (N.Y. App. Div. 1981) (under New York law, the mere pendency of appeal does not prevent use of challenged judgment as basis of collaterally estopping party to that judgment in second proceeding).

On this point, several cases out of this Court addressing foreclosure and collateral state court actions, and subsequent related federal actions, are apt and illustrative. In *Mendez*, Plaintiff brought suit in this Court challenging "the legitimacy of [a] Foreclosure Action and subsequent judgment issued by the state court." *Mendez*, No. 21-CV-826(KAM)(JRC), 2023 WL 8283148, at *5. This Court noted that to "find for [Plaintiff] on any of her claims would require this Court to overrule the state's determination that Bank of America and the loan's subsequent assignees had standing to foreclose on [Plaintiff's] property to satisfy the outstanding loan." *Id*. The Court held that it was "clear from the parties filings that the same transaction or claim [was] at issue as in the Foreclosure Action – the Loan and the Mortgage[,]" and, as such, found "relitigating the validity of the loan is barred by *res judicata*." *Id*.

Likewise, in *Hourani*, this Court found the state court's foreclosure judgment was "final as to all questions at issue between [the] parties, and conclud[ed] all matters of defense that were or might have been litigated in the foreclosure action." *Hourani*, 158 F. Supp. 3d at 147–48. This Court held all of Plaintiff's claims in the federal action "were questions at issue in the Foreclosure

Action or matters that [Plaintiff] raised or *might have raised* in that action[,]" and, as such, held that Plaintiff's claims were barred by *res judicata*. *Id*. (emphasis added); *see also Yeiser v. GMAC Mortg. Corp*., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (citations omitted) (holding "claims are deemed to have been brought to a final conclusion even when they could have been litigated as defenses in the prior action, including defenses to a foreclosure.").

As in *Mendez* and *Hourani*, the undersigned finds the claims Plaintiffs raise here, *i.e.*, violations of the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, the FDCPA, the NYSOCCA, breach of good faith and fair dealing, fraud upon the courts, malicious and injurious falsehood, perjury/subordination of perjury and false swearing, and IIED – all arise from the same transaction that was litigated in the 2013 Foreclosure Action (*i.e.*, the issuance of the loan, the subsequent default on the loan by the Plaintiffs, and Wells Fargo's attempted foreclosure of the Property) – and could have been raised (or were already raised) in that proceeding and/or the 2016 Collateral Action. *See Dupps v. Betancourt*, 994 N.Y.S.2d 633, 634 (N.Y. App. Div. 2d Dep't 2014) (collecting cases) (holding a "judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded"). Thus, they are barred by the doctrine of claim preclusion. *See e.g.*, *Russo*, 549 F. App'x at 10; *Griffith-Fenton v. JPMorgan Chase Bank, N.A.*, No. 18 CV 11031 (VB), 2019 WL 3006537, at *4 (S.D.N.Y. July 10, 2019).

## B. Plaintiff's Claims Otherwise Fail on the Merits

If the Court disagrees that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata*, the undersigned nonetheless finds, even when held to the less stringent standard for *pro se* filings, Plaintiffs' Complaint simply fails to state a claim for: (i) violations of Section 1983, the Fourteenth Amendment and the ADA; (ii) fraud upon the courts;

(iii) breach of the duty of good faith and fair dealing; (iv) violations of the NYSOCCA; (v) malicious and injurious falsehood; (vi) violations the FDCPA; (vii) IIED; and (viii) perjury. *See* ECF. No. 177; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ashcroft*, 556 U.S. at 678 9 (quoting *Bell Atl. Corp.*, 550 U.S. at 570) ("For a claim to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

### 1.   Count I: Violations of Section 1983, the Fourteenth Amendment, and the ADA

As stated, Count I of the TAC alleges Defendants committed violations of § 1983, the Fourteenth Amendment, and the ADA. *See* ECF No. 136 at ¶¶ 81-108. *First*, the undersigned finds Plaintiffs did not sufficiently plead a §1983 violation. Section 1983 "imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *K&A Radiologic Tech. Servs., Inc. v. Commissioner of Dep't of Health,* 189 F.3d 273, 280 (2d Cir.1999) (quoting *Blessing v. Freestone,* 520 U.S. 329, 340 (1997)). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Schuloff v. Queens Coll. Found., Inc.*, 165 F.3d 183, 184 (2d Cir. 1999) (internal quotation marks omitted). Thus, in order to prevail, Plaintiffs must establish two elements: (i) that Defendants "deprived [them] of a right secured by the Constitution or laws of the United States[;]" and (ii) Defendants "acted under color of state law." *Tewksbury v. Dowling*, 169 F. Supp. 2d 103, 108 (E.D.N.Y. 2001); *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (A plaintiff asserting a Section 1983 claim must establish that the "challenged conduct was attributable at least in part to a person who was acting under color of

state law" and "the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.").

Courts have interpreted the term "'color of law' for the purposes of section 1983 actions, and it is by now axiomatic that 'under 'color' of law means under 'pretense' of law." *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir. 1994) (citing *Screws v. United States*, 325 U.S. 91, 111 (1945)). Actions taken under the "color of law" stem from the "misuse of power possessed by virtue of state law . . . made possible only because the wrongdoer is clothed with the authority of state law.'" § 1:3. Defendants—Government officials acting under color of state law, 1 State and Local Government Civil Rights Liability § 1:3) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961)). Private entities such as Defendants may only be held liable for constitutional violations under the under three circumstances: "(i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the entity to take particular action, or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. AccessCorp. V. Halleck*, 139 S. Ct. 1921, 1928 (2019).

Here, Plaintiffs' conclusory allegations that Defendants: (i) "forced [them] to proceed in *propria persona* against their will and better judgment[,]" in the 2010 and 2013 Foreclosure Actions, as well as the 2016 Collateral Action, (ii) denied them "access to the courts," which, according Plaintiffs, is a "species of property" protected by the Due Process Clause of the Fourteenth Amendment, and (iii) "conspired" with New York State Court representatives and officials "to violate Plaintiffs' rights and immunities under the Fourteenth Amendment" are insufficient to establish Defendants violated their due process rights.[25] *See* ECF No. 136 at ¶¶ 86-

---

[25] The Sixth Amendment right to counsel applies only in criminal and quasi-criminal proceedings, and not to civil cases, *see In re Martin-Trigona*, 737 F.2 d 1254, 1260 (2d Cir. 1984), and as such, the undersigned notes the state court did not have the power to compel an attorney to represent Plaintiffs on a *pro bono* basis in previous state litigation.

87, 91. Indeed, Plaintiffs have presented no evidence showing that Defendants forced them to proceed *pro se* in prior state litigation, nor that Defendants denied Plaintiffs "access to the courts" or that "other litigants in similar cases were treated differently than Mr. Leonardo" because New York State Courts did not dismiss the "duplicative" 2013 Foreclosure Action, as, Plaintiffs claim, they have done in other cases. *Id*. at ¶ 84. Likewise, Plaintiffs do not provide any evidence to suggest that Defendants, who are private entities, acted under "color of law." *See Manhattan Cmty. Access Corp*., 587 U.S. 802, 809–10 (2019) (collecting cases) (internal citations omitted) ("[A] private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the State. It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function."). In short, the Wells Fargo Defendants' operation of their respective businesses (*i.e.*, law firms, mortgage loan and financing, and real estate) are not "traditional, exclusive public function[s]" such that Defendants are state actors for the purposes of §1983.

*Second*, the undersigned finds Plaintiffs did not sufficiently plead a violation of the ADA as against both the individual and corporate Defendants. "Titles I and II of the ADA collectively prohibit employers and public entities from discriminating against and excluding from benefits 'qualified individual[s]' with disabilities." *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010), *modified* (July 2, 2010) (quoting 42 U.S.C. §§ 12112(a), 12132)). "Under either title, [a] plaintiff must assert that (1) defendants are subject to the ADA; (2) that she is "disabled" within the meaning of the statute; and (3) she was subject to some adverse

employment action or denied benefits by reason of having such disability." *Id.* (citing *Bolmer v. Oliveira,* 594 F.3d 134, 148 (2d Cir. 2010)). "As an initial matter, individual defendants are not subject to personal liability as a matter of law under [the ADA]." *Id.* at 407-08 (collecting cases); *Jackson v. Roe*, No. 16-CV-2240 (MKB), 2016 WL 3512178, at *2 (E.D.N.Y. June 22, 2016) ("A federal employment discrimination claim must be filed against the employer, not individual employees.")

Here, Plaintiffs do not allege that they were ever "employees" employed by *any* of the Wells Fargo Defendants within the meaning of the ADA, and therefore, Defendants are not subject to the ADA vis-a-vis Plaintiffs. *See* 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer."); *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 161 (E.D.N.Y. 1996) (quoting § 12111(5)(A)) ("[T]he ADA defines the term employer as 'a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person.'"). Plaintiffs' conclusory allegations that they were "disparately treated," denied "due process" and "equal treatment under the law," and their "immunities [were] disregarded" when Defendants conspired with state actors to pursue "duplicative" foreclosure actions (*i.e.*, the 2010 and 2013 Foreclosure Actions) causing Mr. Leonardo to have a stroke, become legally blind, and "disabled," within the meaning of the ADA (ECF No. 136 at ¶¶ 83-90) are insufficient to state a claim under the Act. *See Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 347 (E.D.N.Y. 2014) (internal citations omitted) (cleaned up) (emphasis added) ("Under the ADA, establishing that an individual is regarded as having such an impairment does not, by itself establish liability. Rather, liability is established *only* when an individual proves that his or her *employer* discriminated on the basis of disability.").

## 2.  <u>Count II: Fraud Upon the Court</u>

Pursuant to FRCP Rule 60(d)(3), a court may "set aside a judgment for fraud on the court." *Armatas v. Maroulleti*, No. 08-CV-0310 SJF RER, 2015 WL 5561177, at *3 (E.D.N.Y. Sept. 21, 2015). "Fraud upon the court . . . is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT MDG, 2014 WL 4274182, at *6 (E.D.N.Y. Aug. 28, 2014) (quoting *King v. First Am. Investigations. Inc.*, 287 F.3d 91, 95 (2d Cir. 2002)). The Second Circuit has made clear, "[f]raud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *King v. First Am. Investigations. Inc.*, 287 F.3d 91, 95 (2d Cir. 2002); *see also In re Old Carco LLC*, 423 B.R. 40, 51 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10 CIV.2493 (AKH), 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) (internal citations omitted) ("While Rule 60(c)(1) limits the time within which a motion under Rule 60(b)(3) must be made to one year, a claim based upon fraud on the court under Rule 60(d)(3) is intended to protect the integrity of the judicial process and, therefore, is not time-barred."). "[T]o sustain an independent action for fraud on the court, a plaintiff must prove, by clear and convincing evidence, that [1] the defendant interfered with the judicial system's ability to adjudicate impartially and that [2] the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." *Mazzei v. The Money Store,* 62 F.4th 88, 93-94 (2d Cir. 2023). "Moreover, as to the defendant's state of mind, the law of this Circuit requires clear and convincing evidence of bad faith*." Marco Destin, Inc. v. Levy*, 690 F. Supp. 3d 182, 191 (S.D.N.Y. 2023).

Specifically, fraud upon the court requires a showing "that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *CDR Creances S.A.S. v. Cohen*, 15 N.E.3d 274 (N.Y. 2014) (internal citations omitted). Conduct must be "particularly egregious, characterized by lies and fabrications in furtherance of a scheme designed to conceal critical matters form the court and the nonoffending party." (*Id.*) (citations omitted). Examples of such artifice "include bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing the judge." *Id.* (citing *United States v. Bennett*, No. S197CR639, 2004 WL 736928, at *2 (S.D.N.Y. Apr.5, 2004)). Notably, fraud claims are also subject to FRCP Rule 9(b), "requir[ing] plaintiffs to 'state with particularity the circumstances constituting fraud or mistake.'" *In re Piedmont Lithium Inc. Securities Litigation*, No. 21CV4161OEMPK, 2024 WL 197751, at *3 (E.D.N.Y. Jan. 18, 2024) (quoting Fed. R. Civ. P. 9(b)).

Here, Plaintiffs allege Defendants perpetrated a fraud upon the court, with the aid of their attorneys, and "possibly with the aid of the State Court and/or its employees," to obtain rulings in their favor. *See* ECF No. 136 ¶ 109. Plaintiffs specifically claim Druckman "falsified affidavits," and submitted false paperwork to the Court to earn a favorable ruling in the 2013 Foreclosure Action, and, as a result, Plaintiffs were prevented from "fully and fairly presenting their case." *See id.* at ¶ ¶ 112, 128. However, Plaintiffs submit no evidence to support their conclusory assertions that any documents submitted to the Nassau Supreme Court, or the Appellate Division were falsified, nor that Defendants conspired with state court employees to defraud the Court. *See e.g., Armatas v. Maroulleti*, No. 08-CV-0310 SJF RER, 2015 WL 5561177, at *3 (E.D.N.Y. Sept. 21, 2015) ("Plaintiff's Rule 60(d) Motion is also meritless, as it contains only conclusory assertions

and speculation regarding the alleged falsity of the underlying police report and other filings in this Court, which are unsubstantiated and have been previously addressed by this Court . . .Plaintiff has presented no evidence, much less clear and convincing evidence, that a fraud has been perpetrated on this Court.").

The undersigned has no reason to believe Plaintiffs' adjudication process in state court was otherwise "egregiously" hampered by Defendants' alleged actions. Indeed, the Appellate Division affirmed the Nassau County Supreme Court's dismissal of claims of wrongdoing against Wells Fargo and Druckman in connection with the 2010 and 2013 Foreclosure Actions, and specifically found "there was no evidence that Wells Fargo commenced the [F]oreclosure [A]ctions with the intent to do harm without excuse or justification. On the contrary, Wells Fargo has the legal right to bring foreclosure actions to collect a debt due and owing." *See* ECF No. 176-12 at 7, 10-12; *see also Marco Destin, Inc.*, 690 F. Supp. 3d at 191 ("The Court, which assumes for purposes of this motion practice the truth of Plaintiffs' allegations, concludes [Plaintiffs] fail to state a claim of fraud on the Court because [they] have not met their burden of showing that they were prevented from fully and fairly presenting a case or defense in the Underlying Action. [Plaintiff] was in possession of information that would have supported inquiry into the veracity of [Defendants'] claims of trademark ownership and had every opportunity in the Underlying Action to use the tools available in the adversarial process to contest [Defendants'] asserted ownership rights in the [trademark]. The record of the Underlying Action shows Defendants did not thwart any efforts by to contest ownership; rather, [Plaintiff] simply chose not to explore the issue."). Thus, the undersigned finds Plaintiffs failed to state a claim for fraud upon the court.

### 3.  Count III: Breach of the Duty of Good Faith and Fair Dealing

As stated, Count III asserts breached the implied duty of good faith and fair dealing of the mortgage agreement with Plaintiffs by filing the "duplicative" 2013 Foreclosure Action. *See* ECF No. 136 at ¶ 135.  To state a claim for breach of the implied covenant of good faith and fair dealing under New York law, a claimant must allege: (i) defendant owed plaintiff a duty to act in good faith and conduct fair dealing; (ii) defendant breached that duty; and (iii) the breach of duty was the proximate cause plaintiff's damages. *See Pastor v. Woodmere Fire District.*, 2016 WL 6603189 (E.D.N.Y 2016). Moreover, plaintiffs must provide "'facts which tend to show that [defendants] sought to prevent performance of the contract or to withhold its benefits from [plaintiffs].'" *CIT Bank, NA v. Nwanganga*, 328 F.Supp.3d 189, 201 (S.D.N.Y. 2018) (quoting *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (N.Y. App. Div. 2d Dep't 1999)). In other words, "'to find a breach of the implied covenant, a party's action must directly violate an obligation that may be presumed to have been intended by the parties.'" *CIT Bank, NA*, 328 F.Supp.3d at 201 (quoting *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013)).

Here, the undersigned finds Plaintiffs do not plausibly allege Defendants violated the implied duty of good faith and fair dealing. While Defendants owed Plaintiffs such a duty under the mortgage agreement, Plaintiffs fail to establish that Defendants breached any provision of or sought to prevent Plaintiffs' performance of the mortgage contract. Indeed, Wells Fargo's commencement of the 2013 Foreclosure Actions upon Plaintiffs' failure to pay the amount owed on their loan does not destroy any right that Plaintiffs were entitled to under the mortgage agreement. *See* ECF No. 176-12 at 7, 10-12 (noting Wells Fargo "has the legal right to bring foreclosure actions to collect a debt due and owing."); *Mendez v. Bank of Am. Home Loans*

*Servicing, LP*, 840 F. Supp. 2d 639 (E.D.N.Y. 2012) (mortgage loan servicer's implied duty of good faith and fair dealing arose only as to its performance or enforcement once the agreement had been formed); *In re Bennett*, 154 B.R. 140, 154 (Bankr. N.D.N.Y. 1992), *report accepted*, 154 B.R. 157 (N.D.N.Y. 1993) (the duty of good faith and fair dealing springs from the mortgage, which specifically refers to Farm Credit's right to seek acceleration of the debt in the event of default and to the possibility of foreclosure. The duty of good faith and fair dealing cannot serve to in any way impinge upon those express contractual rights. When Bennett defaulted under the mortgage by failing to make the payment due March 1, 1990, Farm Credit from that point onward became entitled to take steps to collect the entire outstanding indebtedness, including by way of having the property sold at a foreclosure sale. Therefore, as a matter of law it did not breach its duty of good faith and fair dealing *under the mortgage.*"). Thus, the undersigned finds Plaintiffs failed to show Defendants breached the implied covenant in filing for foreclosure upon Plaintiffs' insolvency.

### 4. **Count IV: Violations of the NYSOCCA and FAPA**

The NYSOCCA is a New York state penal law. *See* Penal Law Article 460. As such, the legal remedy is a criminal conviction, not a civil cause of action. *See* Steven L. Kessler, *And a Little Child Shall Lead Them: New York's Organized Crime Control Act of 1986*, 64 St. John's L. Rev. 797, 800 (1990) ("[Article 460] was designed as a prosecutorial tool . . . [and] does not provide for a private or individual cause of action. Only the district attorney or affected state prosecutor may bring such an action."). Here, Plaintiffs are private citizens and therefore cannot bring a claim under state criminal law. *See Wilson v. Neighborhood Restore Dev.,* No. 18-CV-1172 (MKB), 2020 WL 9816020, at *5 (E.D.N.Y. Sept. 28, 2020) (citing *Grimes v. Fremont Gen. Corp.*, 933 F.Supp. 2d 584, 611 (S.D.N.Y. 2013)).

As stated, Count IV alleges Defendants FV, Gold, Nordolillo, and Siller violated the NYSOCCA by commencing the 2013 Foreclosure Action prior to decelerating the 2010 Foreclosure Action. *See* ECF No. 136 at ¶ 143. To the extent Count IV alleges a violation of FAPA, the undersigned notes FAPA requires mortgagees to commence foreclosure actions within six years of loan acceleration. *See* CPLR § 213(4).  Here, Wells Fargo commenced first foreclosure action in 2010 and the second in 2013, and, therefore, both actions were timely filed after the loan was accelerated in 2010. *See Windward Bora LLC v. Lungen*, No. 22CIV4743VBJCM, 2023 WL 9100340, at *4 (S.D.N.Y. Aug. 29, 2023), *report and recommendation adopted*, No. 22 CV 4743 (VB), 2023 WL 8600699 (S.D.N.Y. Dec. 12, 2023), *appeal dismissed sub nom. Windward Bora LLC v. Sterling Nat'l Bank*, No. 24-94, 2024 WL 3335071 (2d Cir. May 3, 2024) ("A new law [was] enacted on December 30, 2022 (*N.Y. Foreclosure Abuse Prevention Act*, 2022 N.Y. Laws Ch. 821 (McKinney)) amending N.Y. C.P.L.R. § 203(h) to prevent tolling of the statute of limitations on foreclosure actions after commencement of a lawsuit to recover on overdue debt. Thus, the Foreclosure Abuse Prevention Act is of no moment to this lawsuit, which was timely filed."). Therefore, Plaintiffs failed to state a claim for violations of NYSOCCA and FAPA.

**5. Count V: Malicious and Injurious Falsehood**

Under New York law, "[t]he tort of trade libel[,] or injurious falsehood[,] requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment[.]" *Banco Popular N. Am. v. Lieberman*, 905 N.Y.S.2d 82, 82 (N.Y. App. Div. 2010). "To successfully establish it, the plaintiff must adequately plead the following elements: '(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages.'" *FullSend, Inc. v. Nelk, Inc.*, No. 21CV5639PKCRML, 2023 WL 2710593, at *6 (E.D.N.Y. Mar. 30, 2023)

(quoting *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016)); *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 483 (S.D.N.Y. 2013) (cleaned up), *aff'd*, 788 F.3d 98 (2d Cir. 2015) ("As [c]ourts in this [Circuit] have explained, injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services, whereas defamation involves impugning the basic integrity or creditworthiness of a business.")

Here, Plaintiffs make conclusory allegations that Defendants Spurs Capital, Realty Advisors, and their employees Rendon and Gonzalez committed malicious and injurious falsehood by "diseminat[ing] [false] data and information" to the public and "harass[ing]" Plaintiffs via the United States Postal Service regarding the foreclosed Property. *See* ECF No. 136 at ¶¶ 151-52. Plaintiffs fail to allege *what* statements were made by Defendants and fail to show any alleged statements were false or made with malice. *See e.g., FullSend, Inc.*, No. 21CV5639PKCRML, 2023 WL 2710593, at \*7 (dismissing plaintiff's malicious and injurious falsehood claim where plaintiff "fail[ed] to plead any fact—aside from repeated conclusory assertions that [defendant] must have behaved wrongly—suggesting malice."). As such, the undersigned finds Plaintiffs fail to state a claim for trade libel.

### 6. Count VI: Violations of the FDCPA

The FDCPA "prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Cortez v. Forster & Garbus*, LLP, 999 F.3d 151, 152 (2d Cir. 2021) (quoting 15 U.S.C. § 1692e); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (holding a notice is deceptive or misleading if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."); *see, e.g., Avila v. Riexinger & Associates, LLC*, 817 F.3d 72, 76 (2d Cir. 2016) (holding this provision requires "debt

collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees."). To establish an FDCPA claim, a plaintiff must show: "(1) the plaintiff is a 'consumer' within the meaning of the FDCPA; (2) the defendant is a 'debt collector;' and (3) the defendant engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.,* 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015) (citation omitted). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692a (3). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a (6).

Here*,* the undersigned finds Defendants are not "debt collector[s]" with the meaning of the FDCPA. Specifically, the FDCPA "limits its reach to those collecting the dues *of another*, and does not restrict the activities of creditors seeking to collect their own debts." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 159 (E.D.N.Y. 2007) (collecting cases) ("Originators of mortgage loans have been recognized as not falling within the definition of debt collectors and therefore not subject to the FDCPA."); *see also McAnaney v. Astoria Fin. Corp.*, 357 F.Supp.2d 578, 592–93 (E.D.N.Y.2005). Moreover, Defendants did not otherwise engage in conduct that violated the FDCPA. Rather, Wells Fargo attempted to collect mortgage debts owed by Plaintiffs through the issuance of the foreclosure, and subsequently brought a Foreclosure Action against them, which is permitted under the Act. *See e.g.*, *Somin*, 494 F. Supp. 2d at 158; *Clomon*, 988 F.2d

at 1319.[26] Accordingly, the undersigned finds Plaintiffs fail to state a claim for a violation of the FDCPA against Defendants.

### 7.  Count VII: Intentional Infliction of Emotional Distress or IIED

"The IIED tort . . .provides a remedy for the damages that arise out of a defendant engaging in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 157–58 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.,* 480 N.E.2d 349, 355 (N.Y. 1985)). To state a claim for IIED, a plaintiff must establish: (i) that there was "extreme and outrageous conduct," (ii) that the conduct was undertaken with "intent to cause, or disregard of a substantial probability of causing, severe emotional distress," and (iii) "that the conduct did in fact cause severe emotional distress. *Howell v. N.Y. Post Co.,* 612 N.E.2d 699, 702 (N.Y. 1993) ("*Howell*"); *Turley*, 774 F.3d at 157–58 (internal citations omitted) (cleaned up) ("IIED, although providing relief for plaintiffs upon occasion post-*Howell,* remains a highly disfavored tort under New York law."). To this end, Plaintiffs must show Defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702 ("requirements of the rule are rigorous, and difficult to satisfy"). Here, Plaintiffs allege that they have "suffered great mental distress, sleeplessness, nausea, irritability" and even a stroke as a result of Defendants' continued efforts to foreclose their home – however, the undersigned finds

---

[26] The undersigned additionally notes that any of Plaintiffs' claims for violation of the FDCPA predicated on Defendants' commencement of the Foreclosure Actions are clearly time-barred. *See Somin,* 494 F. Supp. 2d at 158 (quoting 15 U.S.C. § 1692k) ("The FDCPA provides that an action to enforce any liability created by the act must be commenced 'within one year from the date on which the violation occurs.' While a question may exist as to whether the cause of action accrues on the date upon which the allegedly unlawful communication is sent or received, there is no question that the latest date upon which the one-year period begins to run is the date when a plaintiff receives an allegedly unlawful communication.").

Defendants' lawful foreclosure of Plaintiffs' property does not constitute "extreme and outrageous" conduct" by Defendants intended to cause severe emotional distress. *See* ECF No. 136 at ¶ 175-88; *see also Howell,* 612 N.E.2d at 702 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.") Thus, the undersigned finds Plaintiffs fail to state a claim for IIED against Defendants.

**8.  Count VIII: Perjury**

Finally, Plaintiffs assert Defendants perjured themselves by submitting falsely sworn affidavits to the Court in the underlying litigation. *See* ECF No. 136 at ¶¶ 170-74. Even assuming these allegations are true, Plaintiffs' perjury claims fail as a matter of law because it is well established that Plaintiffs "may not bring a claim sounding in perjury against [Defendants] because there is no private right of action for perjury under New York law." *Phillips v. Delaney*, No. 19-CV-5113 (NSR), 2020 WL 5898972, at *10 (S.D.N.Y. Oct. 2, 2020) (dismissing Plaintiff's perjury claims). Thus, the undersigned finds Plaintiffs fail to state claims of perjury against Defendants.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6) be **GRANTED** and Plaintiff's TAC Complaint (ECF No. 136) be dismissed with prejudice.[27]

---

[27] Given Plaintiffs' *pro se* status, the Court would ordinarily recommend providing Plaintiff with yet another opportunity to amend his complaint to cure any pleading deficiencies. However, under the circumstances, there is no plausible set of facts that could cure the fatal deficiencies here since the claims are all barred by the statute of limitations, or in the alternative, the doctrine of judicial estoppel. Accordingly, any further amendment would likely be futile. *See Chung v. City Univ. of New York* , 605 Fed.Appx. 20, 21 (2d Cir. 2015) (summary order) ("An amendment is futile if the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss.").

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on Defendants' counsel.  Defendants are directed to serve a copy of this Report and Recommendation upon *pro se* Plaintiffs and file proof of service within two business days of the date of this Report and Recommendation.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York
       August 1, 2024

RESPECTFULLY RECOMMENDED,

/S/  *James M. Wicks*
    JAMES M. WICKS
   United States Magistrate Judge